# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**CHRISTOPHER ALLEN THORNSBERRY**　　　　　　　　　**PLAINTIFF**
**ADC #169180**

V.　　　　　　　　　NO. 2:20-cv-00182-JM-ERE

**GARY R. KERSTEIN,** *et al.*　　　　　　　　　　　　　　**DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.　　Procedures for Filing Objections**

This Recommendation has been sent to United States District Judge James M. Moody Jr. Any party may file written objections to all or part of this Recommendation.  Any objections filed must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**II.　　Background**

On September 4, 2020, Plaintiff Christopher Thornsberry, an inmate held at the East Arkansas Regional Unit (EARU) of the Arkansas Division of Correction (ADC), filed this *pro se* § 1983 lawsuit alleging that Defendants Dr. Gary Kerstein, Terri Moody, and Tracy Bennett (Medical Defendants) denied him seizure and pain

medication from August 11 through 31, 2020.[1] *Docs. 1, 2.* Mr. Thornsberry also alleges that Defendants Anthony Jackson, Morieon Kelley, and Benjamin Woodard (ADC Defendants) violated his First Amendment rights when they unplugged the phone at the EARU while Mr. Thornsberry was trying to report the alleged inadequate medical care to the state police hotline. *Id.*

Both the ADC Defendants and the Medical Defendants have filed a motion for summary judgment, brief, and statement of facts, arguing that Mr. Thornsberry failed to exhaust his administrative remedies with respect to all of his pending claims. *Docs. 61, 62, 63* (ADC Defendants); *Docs. 66, 67, 68* (Medical Defendants).

Mr. Thornsberry has responded to both motions for summary judgment. He argues that he attempted to exhaust his administrative remedies, but his efforts were thwarted, and that he should be excused from the exhaustion requirement. *Docs. 79, 80, 81, 82, 83*.

For the reasons explained below, the Court recommends that both the ADC and Medical Defendants' motions for summary judgment (*Docs. 61, 66*) be GRANTED and that all of Mr. Thornsberry's claims be dismissed, without prejudice, for failure to exhaust administrative remedies.

---

[1] The Court dismissed Defendant Jeffrey Stieve for failure to timely serve. *Docs. 54, 56.*

## III. Discussion

### A. The PLRA Makes Exhaustion Mandatory

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss any claim raised in this action that was not fully exhausted *before* the lawsuit was filed. See 42 U.S.C. § 1997e(a) (declaring, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the PLRA required Mr. Thornsberry to satisfy the ADC's requirements for raising and administratively exhausting the claims he is asserting in this lawsuit *before* bringing this action.[2]

---

[2] There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative

3

**B.     The ADC's Exhaustion Policy**

At all times relevant to this action, the ADC provided a three-step administrative grievance process through ADC Administrative Directive 19-34 (AD 19-34). *Docs. 61-1* (AD 19-34); *67-1* (AD 19-34); *61-2* (Grigsby-Brown Dec.). The written policy advises inmates they must exhaust their administrative remedies at all levels before filing a § 1983 lawsuit. *Docs. 61-1 at 19, 67-1 at 19*.

At "Step One," the grievance process begins when an inmate submits, using a unit level grievance form, a claim to the designated unit-level problem solver within fifteen calendar days of the incident.³ The statement of the claim must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate . . . ." *Id. at 6*. A problem solver then investigates the complaint, and if it cannot be resolved, he or she documents the resolution attempt at the bottom of the grievance form, and the inmate and the problem solver sign and date the form. *Id. at 7-8*. At

---

procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).
   ³ Technically, an inmate's claim asserted at Step One does not become a formal "grievance" until it proceeds to Step Two, where it is then assigned a grievance number. Because ADC officials, when processing grievances, refer to the filing of a Step One informal resolution as filing a grievance, the Court will do the same.

this point, the inmate has three days to proceed Step Two, using the same form. *Id. at 8*.

At "Step Two," the inmate may file a formal grievance on the same form used at Step One, explaining why the informal resolution was unsuccessful. *Docs. 61-1, 67-1 at 9*. Within five days of receiving a formal grievance, a grievance officer provides the inmate a form that either acknowledges or rejects the grievance. *Id. at 10, 21*. If the grievance is accepted, the acknowledgment form provides an expected response date (*Id. at 21*), and if no response is received by that date, the inmate may proceed to "Step Three." *Id. at 11*.

At "Step Three," if the inmate receives no response or is unsatisfied with a response at Step Two, he or she may appeal to a deputy director, who either rejects the appeal or provides a response, at which point the grievance process is exhausted. *Id. at 11-13*.

Thus, to properly exhaust his administrative remedies with respect to each claim asserted against each Defendant, Mr. Thornsberry was required to present each claim in a timely filed grievance and appeal it through all three steps of the ADC's grievance process. *See Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)") (emphasis in original);

5

*Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

### C. Mr. Thornsberry's Grievances

The ADC Defendants submit the declaration of Terri Grigsby-Brown, the ADC Inmate Grievance Coordinator , in support of their motion. *Doc. 61-2.* According to Ms. Grigsby-Brown, Mr. Thornsberry filed eight grievances (four medical and four non-medical) between August 11, 2020 (the date Mr. Thornsberry's phone was allegedly unplugged) and September 4, 2020 (the date Mr. Thornsberry filed this lawsuit) that involve ADC Defendants.[4] *Doc. 61-2 at 4.*

The Medical Defendants submit the declaration of Amanda Moore, an ADC Medical Grievance Officer, in support of their motion. *Doc. 67-3*. According to Ms. Moore, she reviewed all of Mr. Thornsberry's medical grievances initiated between June 30, 2020 (the date first identified by Mr. Thornsberry as the day he ran out of his seizure medication), and September 4, 2020. *Id*. According to Ms. Moore, Mr. Thornsberry lodged nine formal medical grievances but did not complete the ADC

---

[4] The 4 medical grievances produced by ADC Defendants are EAM-20-01983, EAM-20-01984, EAM-20-02020, and EAM 20-02054. The 4 non-medical grievances produced by ADC Defendants are EAM-20-01978, EAM-20-01994, EAM-20-01998, and EAM-20-01999.

grievance process with respect to any of these nine grievances before September 4, 2020.[5] *Id*.

In opposition to ADC Defendants' motion for summary judgment, Mr. Thornsberry submits an unnumbered grievance (*Doc. 79 at 16*). In reply, ADC Defendants submit the declaration of Debra Mills, a grievance officer at EARU, who states that the unnumbered grievance was never received by her office. *Doc. 86-1*.

The following is a discussion of all Mr. Thornsberry's grievances produced by the parties.

### 1. Grievances Exhausted *After* Mr. Thornsberry filed this Lawsuit

Mr. Thornsberry did not fully exhaust grievances EAM-20-01538,[6] EAM-20-

---

[5] The nine medical grievances produced by Medical Defendants are EAM-20-01538, EAM-20-01574, EAM-20-01607, EAM 20-01608, EAM-20-01983, EAM-20-01984, EAM-20-02020, EAM 20-02054, and EAM-20-02087.

[6] On July 1, 2020, Mr. Thornsberry filed grievance EAM-20-01538 as an emergency grievance, complaining that he had not refused to see Defendant Kerstein, who had failed to provide him seizure medication. *Doc. 67-2 at 1-3*. The Health Services Administrator (HSA) responded that Mr. Thornsberry was scheduled to see Defendant Kerstein on June 24, 2020, but he refused to attend the appointment. The HSA noted that Mr. Thornsberry's seizure medication was re-ordered on July 5, 2020. *Id*. Mr. Thornsberry appealed. *Id*. On September 14, 2020, ten days *after* Mr. Thornsberry filed this lawsuit, the director found the appeal had no merit because Mr. Thornsberry refused to see Defendant Kerstein on June 24, 2020, and his medication was re-ordered and good through August 4, 2020. *Id.*

7

01574,[7] EAM-20-01607,[8] EAM-20-01978,[9] or EAM-20-02087[10] before he filed this lawsuit because the deputy director did not render decisions on the grievances until after September 4, 2020.

In Mr. Thornsberry's response, he argues that when he filed grievances as an "emergency", the ADC problem solvers and supervisors deviated from policy by

---

[7] On July 3, 2020, Mr. Thornsberry filed grievance EAM-20-01574 as an emergency grievance, complaining that Defendant Kerstein denied him gabapentin, which caused him to experience seizures. *Doc. 67-2 at 4-6*. On July 5, 2020, the problem solver wrote that Mr. Thornsberry would begin a new seizure medication on August 3, 2020 and that, as discussed with Mr. Thornsberry on July 5, 2020, his gabapentin would be tapered off. *Id*. On September 31, 2020, the HSA found the grievance had no merit. Mr. Thornsberry appealed. On September 24, 2021, twenty days *after* Mr. Thornsberry filed this lawsuit, the director found the appeal had no merit. *Id*.

[8] On July 7, 2020, Mr. Thornsberry filed grievance EAM-20-01607 as an emergency grievance, complaining that Defendants Kerstein and Bennet would not renew his seizure medication and that he had a seizure on July 6, 2020, which resulted in unphotograhed injuries. *Doc. 67-2 at 7-10*. The HSA found the grievance had no merit because medical personnel are not responsible for taking photographs and because a new seizure medication was ordered for Mr. Thornsberry. *Id*. Mr. Thornsberry appealed. On September 24, 2020, twenty days *after* Mr. Thornsberry filed this lawsuit, the director found the appeal had no merit. *Id*.

[9] On August 18, 2020, Mr. Thornsberry filed grievance EAM-20-01978 as an emergency grievance, complaining that inmate Witcher was harassing him and threatened to have him charged with a disciplinary. *Doc. 61-4*. The warden responded that he moved Mr. Thornsberry away from inmate Witcher. *Id*. Mr. Thornsberry appealed. *Id*. On October 19, 2020, over a month after Mr. Thornsberry filed this lawsuit, the director found the issue was resolved. *Id*.

[10] On August 31, 2020, Mr. Thornsberry filed grievance EAM-20-02087 as an emergency grievance, complaining that Defendant Kerstein took him off seizure and pain medication on August 11, 2020. *Doc. 67-2 at 26-29.* Mr. Thornsberry alleged that he had multiple seizures as a result. *Id*. The HSA found the grievance had no merit, explaining that Mr. Thornsberry was taken off gabapentin and put on Vimpat instead. *Id*. Mr. Thornsberry appealed. *Id*. On November 19, 2020, over two months *after* Mr. Thornsberry filed this complaint, the director found that Mr. Thornsberry was started on a new seizure medication on July 30, 2020, and the appeal was without merit. *Id*.

failing to treat each grievance as an emergency.[11] *Docs. 81, 82*. According to Mr. Thornsberry, by failing to treat a grievance as an emergency after *he* made that designation, officials "hindered the correct time frame for an emergency response." *Doc. 82 at 4*.

The ADC's grievance policy make it clear that, while an inmate may designate a grievance as an emergency, the inmate lacks the power to *require* that a grievance be treated as an emergency.[12] Rather, the grievance must be "deemed an emergency by the problem solver." *Doc. 67-1 at 2*. If the policy were otherwise, inmates could declare any problem an emergency.

Here, Mr. Thornsberry may have filed grievances EAM-20-01538, EAM-20-01574, EAM-20-01607, EAM-20-01978, and EAM-20-02087 as emergency grievances, but the problem solver did not deem any of these grievances to be an emergency.

---

[11] Mr. Thornsberry argues, specifically, that grievances EAM-20-1538, EAM-20-01574, and EAM-20-02087 should have been treated as emergencies. *Docs. 81, 82*.

[12] AD 19-34 provides:
Emergency - a problem that, if not immediately addressed, subjects the inmate to a substantial risk of personal injury or other serious and irreparable harm such as, physical abuse. If a grievance, submitted as an emergency grievance by the inmate, is deemed an emergency by the problem solver, the grievance is immediately submitted to the Warden/highest ranking supervisor at the unit without the completion of Step One, the informal process; however, if the grievance is not an Emergency, it will be processed under Step One.
*Doc. 67-1 at 2*.

The problem solver's decision not to treat these grievances as emergencies did not render the grievance process unavailable to Mr. Thornsberry.[13] Mr. Thornsberry received a final decision on each grievance, albeit later than he preferred. Pursuant to the PLRA, grievances must be fully exhausted *before* a lawsuit is filed in federal court. Accordingly, grievances EAM-20-01538, EAM-20-01574, EAM-20-01607, EAM-20-01978,[14] and EAM-20-02087 did not exhaust any of Mr. Thornsberry's claims in this lawsuit.

### 2.   Grievances Regarding Matters Not Raised in this Lawsuit

In grievances EAM-20-01608, EAM-20-01983, and EAM-20-02054, Mr. Thornsberry complained that he was incorrectly charged a medical co-pay.[15] For each grievance, the Health Services Administrator (HSA) responded that Mr.

---

[13] *See Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016) (three circumstances where an administrative remedy may be unavailable: (1) process cannot be completed because it is not capable of completion; (2) there is a legitimate issue with navigating the process because it is so confusing no reasonable prisoner could use the process; (3) when prison administrators thwart inmates from taking advantage of the grievance process through misrepresentation or intimidation).

[14] EAM-20-01978 did not raise any of the claims brought in this lawsuit, so even if Mr. Thornsberry had fully exhausted this grievance before he filed this lawsuit, it would not have exhausted his administrative remedies as to any claim in this action.

[15] On July 7, 2020, Mr. Thornsberry filed grievance EAM-20-01608, complaining that he was charged a medical co-pay on July 5, 2020, that he should not have been charged. *Doc. 67-2 at 11-14*. On August 16, 2020, Mr. Thornsberry filed grievance EAM-20-01983, complaining that he was charged a medical co-pay on August 7, 2020, that he should not have been charged. *Doc. 67-2 at 11-17*. On August 25, 2020, Mr. Thornsberry filed grievance EAM-20-02054, complaining that he was charged a medical co-pay for a chronic care visit on August 21, 2020, that he should not have been charged. *Doc. 67-2 at 23-25*.

Thornsberry's co-pay fees were returned to his account.[16] *Doc. 67-2 at 11-17*. Because Grievances EAM-20-01608, EAM-20-01983, and EAM-20-02054 do not raise any of the inadequate medical care claims brought in this lawsuit, they are irrelevant to the exhaustion issue before the Court.

### 3. Grievances Not Fully Exhausted

#### a. Unappealed Unfavorable Ruling

On August 16, 2020, Mr. Thornsberry filed grievance EAM-20-01984 as an emergency, complaining that he had submitted numerous sick calls but had not been seen by medical providers. *Doc. 67-2 at 18-20*. On August 31, 2020, the HSA found Mr. Thornsberry's allegations unfounded, stating: "Medical has seen you for all sick calls that you have submitted and were received." *Doc. 67-2 at 18*. Mr. Thornsberry failed to appeal the HSA's unfavorable decision to the deputy director as required. *Doc. 67-1 at 13* ("A decision or rejection of an appeal at this level is the end of the

---

[16] Medical Defendants argue that because Mr. Thornsberry did not appeal to the director, he did not fully exhaust these grievances. *Doc. 68 at 6*. However, under the ADC policy, inmates are not required to exhaust a favorable ruling. *Doc. 76-1 at 12* ("[a]fter receiving a response from the Warden, the Health Services Administrator (HSA), the Mental Health Supervisor, or designees, *if the inmate is not satisfied*, he or she may appeal to the appropriate Chief Deputy/Deputy/Assistant Director who will attempt to resolve the matter....") (emphasis added); see also *Jones v. Huff*, No. 5:18-cv-00006-DPM-BD, 2019 WL 3956131, at *2 (E.D. Ark. July 1, 2019).

grievance process."). Accordingly, Mr. Thornsberry did not exhaust grievance EAM-20-01984.

### b. Exceeding the Weekly Limit

On August 22, 2020, Mr. Thornsberry filed grievances EAM-20-01994,[17] EAM-20-01998,[18] EAM-20-01999,[19] and EAM-20-02020.[20] Each grievance was rejected at the until level because Mr. Thornsberry had already submitted three formal grievances within the seven-day period prior to August 22, 2020.[21] *Doc. 61-2, at ¶ 21*. Mr. Thornsberry did not appeal the rejection of the grievances to the deputy director level. *Id*. Accordingly, grievances EAM-20-01994, EAM-20-01998, EAM-20-01999, and EAM-20-02020 were not exhausted.

### c. Unnumbered Grievance

Mr. Thornsberry submits an unnumbered grievance that he claims to have

---

[17] Mr. Thornsberry filed grievance EAM-20-01994 as an emergency, complaining that Warden Branch and Lieutenant Barnett (not named Defendants) retaliated against him for making a PREA call. *Docs. 61-7, 63 at ¶ 50*.

[18] Mr. Thornsberry filed grievance EAM-20-01998 complaining that he was supposed to meet with the classification committee, but the committee met without him, *Docs. 61-8; 63 at ¶ 54*.

[19] Mr. Thornsberry filed grievance EAM-20-01999, requesting information on whether a phone number was for the PREA hotline or a "crime information state police hotline." *Doc. 61-9*.

[20] Mr. Thornsberry filed grievance EAM-20-02020 as an emergency, complaining that a light in his cell stayed on and flickered, which made it difficult for him to sleep and caused him to have seizures. *Docs. 61-10, 67-2 at 21-22*.

[21] The ADC grievance policy is clear: "Inmates are only allowed to submit three formal grievances, Step Two, each seven-day period." *Docs. 67-1 at 15*.

filed as an emergency grievance on August 12, 2020. *Doc. 79 at 16*. The unnumbered grievance complains that Defendant Woodard unplugged the phone while Mr. Thornsberry was attempting to report being in fear for his life. *Id*. Nothing on the unnumbered grievance indicates that a problem solver received it.[22] *Id*. Step Two is filled in with the date of August 16, 2020. *Id*. According to Mr. Thornsberry, he never received a response to the unnumbered grievance at Step One or Step Two.[23] *Id. at 2-4, 7, 10.*

AD 19-34 provides that if a problem solver fails to respond to a Step One grievance within three days, the inmate may proceed to Step Two, no later than six working days from the original submission of the Step One grievance.[24] *Doc. 67-1 at 8, ¶11*. AD 19-34 also provides that if an inmate does not receive a response to a Step Two grievance within twenty days, he may move to the next level of the process and appeal to the deputy director within five days. *Doc. 67-1 at 11, ¶7 and ¶9.*

Mr. Thornsberry alleges that because he did not receive a response at Step

---

[22] Mr. Thornsberry asserts that the unnumbered grievance was signed by ADC employee Sergeant Williams and Smith (not named as Defendants); however, the unnumbered grievance produced by Mr. Thornsberry contains no such signatures. *Doc. 79 at 4, 16*.

[23] Ms. Moore declares this unnumbered grievance was never received as a formal grievance in her office because there would have been a record, and the grievance would have received a number if the office had received it. *Doc. 86-1*.

[24] Six days "allows three (3) working days to wait for a response to Step One, and three (3) working days to initiate Step Two." *Doc. 67-1 at 8, ¶11*.

One, he proceeded to Step Two on August 16, 2020 (*Doc. 79 at 7, 16*). According to Mr. Thornsberry, he did not receive a response at Step Two. *Doc. 79 at 7.* Mr. Thornsberry does not allege he appealed to the deputy director, rather he asserts that he "did try to exhaust his administrative remedies against the ADC Defendants but was hindered in do[sic] so." *Doc. 79 at 5*.

Even assuming Mr. Thornsberry attempted to exhaust the unnumbered grievance at Steps One and Two and received no response, he was required to continue the process by appealing to the deputy director. Because Mr. Thornsberry did not appeal to the deputy director, the unnumbered grievance was not fully exhausted. See *Terry v. Jenkins*, No. 2:20-cv-00057-BSM-JJV, 2020 WL 4745056, at *3-4 (E.D. Ark. July 29, 2020), *report and recommendation adopted*, No. 2:20-cv-00057-BSM, 2020 WL 4742244 (E.D. Ark. Aug. 14, 2020), *appeal dismissed*, No. 20-3079, 2020 WL 9211129 (8th Cir. Oct. 26, 2020) (failure to appeal an unnumbered grievance to the chief deputy when inmate claimed ADC officials did not respond to Step Two did not excuse his failure to exhaust his administrative remedies).

## III.    Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. The ADC and Medical Defendants' motions for summary judgment for failure to exhaust administrative remedies (*Docs. 61, 66*) be GRANTED and judgment be entered in favor of Defendants Gary R. Kerstein, Terri Moody, Tracy Bennett, Anthony Jackson, Morieon Kelley, and Benjamin Woodard.

2. All the claims in this lawsuit be DISMISSED, without prejudice, because Plaintiff Christopher Allen Thornsberry failed to properly exhaust his administrative remedies against Defendants.

Dated this 31st day of August, 2021.

_____
UNITED STATES MAGISTRATE JUDGE